## LYDIA NOYES *vs.* JOSEPH WEST & others.

On the 26th of March, 1838, W. and T. J. W., partners, made an assignment by indenture, executed only by the assignors and assignees, under the statute of 1836, c. 238, for the benefit of creditors: The plaintiff was then the surety of the assignors, on a note dated May 22d, 1826, for $2500, payable on demand, with interest annually, to L. W., executor of S. W., and both the plaintiff and L. W. were duly notified of the assignment, and knew that they might become parties thereto, at their election: The assignees took possession of the property assigned, and with the consent of the creditors, generally, permitted the assignors, as their agents, to carry on their former business, (as they were authorized to do by the indenture,) until March, 1842, when, in compliance with a request in writing, accompanied by a release under seal, signed and executed by all the creditors of the assignors, with two exceptions, but not by the plaintiff or L. W., the assignees reconveyed to the assignors a large portion of the property embraced in the assignment, and the assignors, on the same day, conveyed the same to W., one of the defendants, who thereupon gave the assignors his obligation, secured by a mortgage back of the property, to indemnify them against all the claims of creditors, including the note on which the plaintiff was surety: On the 21st of February, 1842, J. R. was appointed administrator *de bonis non* of L. W., and was afterwards requested as such to become a party to the assignment and also to sign the written consent to the reconveyance, both which he declined: On the 2d of December, 1843, the plaintiff paid the amount of the note, on which she was surety for the assignors, to J. R., the administrator of S. W.: One of the assignors, W. W., having died, in November, 1842, the plaintiff, on the 5th of November, 1844, commenced an action (which was still pending) on the note against T. J. W. as surviving partner, and attached thereon certain of the property which had been assigned but not reassigned, and in the same suit summoned the assignees as trustees, who appeared and answered: On the 8th of July, 1844, T. J. W. took the benefit of the insolvent law, whereby the attachment was discharged: On the 2d of February, 1844, and again in June, 1845, the plaintiff applied to the assignees to be permitted to become a party to the original assignment, but was refused, on the ground, that all persons entitled to become parties thereto had either refused or had released the assignees from the performance of the trust: The plaintiff thereupon brought her bill in equity against the assignees, and the other parties mentioned above, praying that an account of the property and effects assigned might be taken; that the plaintiff might be allowed to become a party to the assignment; and that the amount of her claim might be paid her from the funds: It was held, that the plaintiff was entitled to a decree in her favor; also, that creditors who were parties to the retransfer, but had not been paid, were not entitled to share with the plaintiff in the proceeds of the property assigned; and that an application to the court, for that purpose, after the decree in favor of the plaintiff, was too late.

THIS case was brought to a hearing in May, 1847, before the chief justice, by whom an opinion was subsequently given in favor of the plaintiff; whereupon, several exceptions being taken thereto by the defendants, a report of the case

was made by the judge, stating the pleadings and facts, together with his opinion thereupon, for the consideration of the whole court.

The report was as follows : —

This is a bill in equity, brought by the plaintiff to enforce a trust, set forth in an indenture executed by William and Thomas J. Whittemore, dated March 26th, 1838. The indenture was an assignment by the Whittemores, made under the statute of 1836, *c.* 238, to three of the defendants, as trustees, for the benefit of their creditors. The assignment is in the usual form, and contains a provision giving power to the assignees to complete the manufacture of articles in the process of manufacture at the time of the assignment, and to purchase raw materials for that purpose. It was executed by the Whittemores, and by the three assignees, but by no creditor of the assignors. The plaintiff's claim arises upon a note signed by the Whittemores, dated May 22d, 1826, for $2500, payable on demand, with interest annually, to Luke Wyman, executor of the will of Seth Wyman, or order, which note the plaintiff signed as surety. On the 2d of December, 1843, the plaintiff paid the amount due thereon to James Russell, who had been appointed administrator *de bonis non*, with the will annexed, of Wyman's estate, on the 21st of February, 1842.

The assignees took possession of the property under the assignment, and gave public notice, as required by the statute, and held the same property, until March, 1842; when, in compliance with a request in writing, accompanying a release under seal, signed by all the creditors of the Whittemores, with two exceptions, but not by the plaintiff, or Luke Wyman, bearing date June 11th, 1840, the assignees reconveyed the larger portion of the property assigned to them to the Whittemores, and the Whittemores on the same day conveyed the same property to the defendant Wells, and Wells on the same day gave his obligation to the three assignees, which recites the aforesaid request and reconveyance, and contains an agreement that Wells shall save and keep

narmless and indemnified the assignees, from and against all claims and losses, by reason of their acceptance of the trust, and reconveyance of the property as aforesaid, &c., &c. Annexed to the bond is a schedule exhibiting an account of the liabilities against which Wells was to indemnify the assignees, and which includes the note since paid as surety, and taken up by the plaintiff. By the same instrument, the property conveyed to Wells was mortgaged to the assignees, to secure·the performance of the condition of the bond.

It further appeared, by the deposition of James Russell, that while he held the note, as administrator *de bonis non,* &c., he was applied to and requested to become a party to the assignment, as such administrator, but he declined to execute the same, or become a party thereto ; and that, further, about the time of the reassignment, he was notified of the same, and requested to sign the written consent and request aforesaid, dated June 11th, 1840, requiring the assignees to reconvey the property as aforesaid, and that he declined so to do. Russell further deposed, on cross examination, that upon being notified of the intended reconveyance of the property to the assignors, he neither consented thereto nor objected ; always looking to the plaintiff after the Whittemores assigned their property.

It was also stated, by the answers of the assignees, that Wyman and the plaintiff were duly notified of the existence of the assignment to them, and knew that they might become parties thereto at their election. They deny that the reassignment of the property was made to the Whittemores, without the knowledge or consent of the plaintiff and Wyman, but allege that they were informed that the same was contemplated, and did not object, and that the reconveyance would not have been made, if they or either of them had intimated any objection thereto, and that the bond aforesaid of Wells was not intended as an obligation on his· part, to pay all the claims of creditors, who had not consented to the reconveyance, or to admit that such creditors had any legal claim or demand against the assignees, but merely to protect

36 *

the assignees against any and all possible claims and contingencies.

It also appeared, that William Whittemore died in November, 1842, and that on February 5th, 1844, the plaintiff brought an action on the note against Thomas J. Whittemore, as surviving partner of the firm, and attached certain personal property of Whittemore which had been assigned by the indenture aforesaid, and which had never been reassigned, and in the same suit summoned the three assignees as the trustees of Whittemore; that they appeared and answered in that suit, which was still pending at the time of the hearing in this case; that on the 8th of July, 1844, Thomas J. Whittemore, having applied for the benefit of the insolvent law, the said James Russell was duly appointed assignee of his estate; and the attachment created by the trustee process, and under the writ, was discharged thereby.

It also appeared, that on the 2d of February, 1844, the plaintiff applied by her attorney to become a party to the assignment for the benefit of creditors, and that the assignees declined to permit her to do so, alleging that they did not consider the assignment in force for the benefit of the creditors, as they were informed and believed that all persons entitled to become parties to it either refused so to do when requested, or had released the assignees from the performance of the trust; and that a similar application was made in June, 1845.

It was admitted, that during the period up to the time of the reconveyance in 1842, the assignees, with the consent of the creditors, generally, permitted the Whittemores, as their agents, to carry on their former business, as they were authorized to do by the indenture.

The said Wells, and the said James Russell, as assignee of Thomas J. Whittemore, were made parties defendant.

The prayer of the bill is, that the assignees may be decreed to render an account, &c., and that the plaintiff may be permitted to become a party to the assignment, and the defendants decreed to pay her the amount of her claim.

Upon these facts, the defendants contended : —

1. That the plaintiff had lost her right now to become a party to the assignment by the laches of Wyman and her own, or waived it by silently permitting the assignees to retransfer the property to the assignors, without objecting thereto.

2. That it was contrary to equity and good conscience for her to lie by and see this retransfer made, without notice of her claim and objecting thereto.

3. That one of the assignors having died, and the other of them having taken the benefit of the insolvent law, the plaintiff ought not now to prevent the equal distribution of this property, by insisting on the execution of these trusts, but, having similar rights and remedies with the other creditors, should be left to them.

4. That the commencement of the suit at law by the plaintiff was an election of a remedy inconsistent with her present claim, and an acquiescence in the retransfer of the property.

But the court overruled the objections and decreed a reference of the case to a master to take an account of the trust property in the assignee's hands, and that the plaintiff was entitled to be paid her claim from the same.

The opinion of the chief justice, stating the reasons and grounds of his decision, is as follows : —

SHAW, C. J. This is a bill in equity, brought by Lydia Noyes, to enforce a trust made in her favor, in an indenture executed by William Whittemore and Thomas J. Whittemore, on the 26th of May, 1838. It was an assignment of the Whittemores to trustees, for the benefit of their creditors, made pursuant to the statute of 1836, *c.* 238, and conformably to its provisions.

By force of that statute, such assignment was made valid and effectual, to transfer the property to the trustees, and enable them to hold against any after attachment which might be made, although such attachment were made before any of the creditors had become parties to the assignment.

One great object of the statute was, to enable a debtor to make such assignment for the benefit of his creditors, and so as to avoid being defeated by after attachments ; the condition being, that it should be an assignment of all the debtor's property liable to attachment, and so made as to secure an equal distribution amongst all the creditors.   Such an assignment has been held to create a trust in favor of all the creditors, which cannot be defeated by any mismanagement of the property afterwards by the debtor, or the assignees, or by the misappropriation of the funds, or by the payment of many creditors in full.   *Shattuck* v. *Freeman*, 1 Met. 10.

By the provisions of this statute, any creditor had a right to become a party, and share in the fund, at any time before a final dividend.

But even before the passing of this statute, by which this right was expressly secured, it had been held, that when property was conveyed to assignees, in trust for the benefit of creditors, either expressed by name, or otherwise described or designated, such creditors acquired an interest — an equitable right to the fund — which the trustees were bound to recognize and to execute.   *Ward* v. *Lewis*, 4 Pick. 518; *Pingree* v. *Comstock*, 18 Pick. 46.

The question then recurs, had the plaintiff a right to call for the execution of this trust; and if so, what was the nature of that right, and how was it to be perfected and enforced ?

This assignment was made on the 26th of March, 1838. At that time, a promissory note was outstanding, made in 1826, by William and Thomas J. Whittemore as principals, and the present plaintiff as surety, for the payment of $2500, with interest annually, to Luke Wyman, administrator of Seth Wyman.   The plaintiff, therefore, was not at that time a creditor of the assignors, in the strict sense of the term. But by the second section of the statute, it is provided, that all persons who are indorsers or sureties for the debtor, &c., (mentioning some other classes of conditional or contingent

demands,) may be considered as creditors, within the provisions of the act, provided the note or other contract be made before the date of the assignment, and provided that the debt demanded thereupon shall become absolute before the final dividend of the assigned property.

The situation of the plaintiff satisfies all these conditions. She was surety on a note made long before the date of the assignment, and her demand upon the Whittemores did become absolute by her having been obliged, in December, 1843, to pay the debt as such surety, by which she made the debt her own. This was done before a final or any other dividend of the assigned property was ever made.

1. The first answer, relied upon by the defendants, is, that neither Seth Wyman, the holder of William and Thomas J. Whittemore's note, nor the plaintiff, who signed it as surety, ever became parties to the assignment, before the retransfer of the property, although due notice was given of the assignment, and they had an opportunity so to become parties. This objection, it appears to me, is founded upon a mistaken view of the law of 1836, and assignments made under it. It is true, that before that statute, an assignment was not valid against attaching creditors, unless creditors holding debts equal to the value of the assigned property had become parties. The statute in question, however, altered the law in this respect, and by the fourth section made express provision, that all creditors should have a right to become parties to the assignment, and of course to participate in its benefits, provided they applied before the final dividend should be declared.

The next main ground of defence is, the laches of Seth Wyman, the holder of the note, and of the plaintiff, the surety upon it, in waiting from 1838 to 1844, when this suit was commenced.

In regard to this objection, it is proper to remark, that the plaintiff was not an actual creditor, until she paid the note as surety, in December, 1843. To that time her right was potential and conditional, and it is very questionable, to say

the least, whether she could have taken actual measures, as a party, before that time, to enforce the execution of the trust; nor was she, during that period, responsible for the laches, if any there was, of Wyman.

But a more satisfactory answer is, that it appears by the proofs, and is admitted by the answers, that at the time of the assignment, the times were unfavorable for settling the property; that it was considered by the assignees, that the fund would be benefited by carrying on the business, and by the general consent of the creditors, the assignees, through the agency of the assignors, continued to procure materials and labor to carry on the business. Surely, whilst the business was thus carried on by the general consent, and for the general benefit, no creditor could be chargeable with laches in omitting to call actively for an execution of the trust, by the sale and division of the property; and yet it is not perceived, that they could have taken any other active measure to assert their rights and claims, and rebut the imputation of laches.

But there is another answer to the charge of laches, founded on lapse of time; and it is furnished by a consideration of the provisions of the statute, and its practical operation.

The assignees are required, by the fifth section, to give public notice of the assignment. There is, then, nothing for the creditors to do, but to preserve their proofs, and wait the movement of the assignees.

Then the sixth section of the statute requires, that the assignees shall declare and pay dividends, from time to time, as soon as may be, after converting the effects into money. The creditors may, undoubtedly, if they believe the assignees to be negligent, take measures, by the aid of the supreme judicial court, to cause a just and prompt settlement and distribution of the estate, among all who are entitled to it.

But, supposing nothing is done for several years, the question is, whether the creditors are chargeable with laches. The statute obviously makes it the duty of the assignees to take the first step, after the assignment; and, until some

notice from them, that a dividend is to be made, there is no duty on the part of the creditors to present or prove their claims, or become parties to the assignment.

2. The next ground relied upon is, that, in 1842, the assignees, at the request of nearly all the creditors, expressed in a paper signed by them, reassigned the property to the Whittemores, and thereby divested themselves of the means of executing the trust further.

It appears, that during the four years that had elapsed from the time of the assignment to that of the retransfer, the assigned property had been greatly reduced; and the probability is, that a considerable portion of the debts had been paid, and the number of the creditors much diminished. But this is not important; the creditors had an undoubted right to enter into any new arrangement, and to exempt the assignees from the further execution of the trusts, in behalf of themselves respectively. But it is plain, that the rights of the respective creditors were several, and not joint, and that they could do nothing to impair the rights of the plaintiff, or to sanction a breach of trust, in regard to her. If, therefore, every debt except that of the plaintiff had been released, her claim upon the trust fund, and upon the trustees to apply that fund, would have remained the same.

But it is contended, that the plaintiff and Wyman, knowing of the contemplated retransfer of the property to the original assignors, consented to it, or ratified it, or did not object to it.

I can perceive no evidence of any such consent or ratification. It appears, that all those who did consent did so by a formal instrument in writing, and it may be regarded as doubtful, whether such instrument would not be necessary, by way of release, or some consideration proved amounting to an accord and satisfaction, to discharge a vested right under the assignment. The fact, that neither the name of Wyman, nor that of the plaintiff, appears on this paper, affords some evidence that they did not come into the arrangement. And it must be remembered, that two years elapsed,

during which this paper was in circulation, from the time that such a retransfer was proposed, to the time it was executed.

It further appears, that this paper was presented to Russell, the administrator of Wyman, the holder of this note, and he was somewhat urgently pressed to sign it, which he says he refused to do. In regard to this term "refused," he afterwards says, that he neither consented nor refused. When one is urgently solicited to do an act, and does not do it, it may be taken as a refusal.

There is no evidence tending to show that the plaintiff assented ; the most that is relied on is, that she knew it was in contemplation, and did not in terms object to it. If she was entitled to have an execution of the trust, it was a breach of trust, on the part of the assignees, to divest themselves of the property, without providing for her ; and it was not her duty to give them notice not to commit a breach of trust, in order to preserve her rights. If they did so, they did it at their own peril. They seem to have so considered it, by providing for their own indemnity, as after stated.

But it is further said, that it was contrary to equity and good conscience for her to lie by, and see them retransfer the property, without giving them notice of her claims. The rule on which this argument is founded is a very good one, and founded on the soundest principles of equity ; but I think it has no application to a case like this. It is intended for the security of a stranger, who purchases property without notice of any lien, claim or incumbrance : one who has such an incumbrance, and gives no notice to such ignorant purchaser, by means whereby he is misled, to his loss, cannot equitably set up that claim. But the assignees had full notice of their duties and obligations ; they knew that all the creditors had not consented to abandon their claims under the assignment, and they knew that this note was outstanding, for it was enumerated in one of the schedules attached to the retransfer. Nor were they misled. They made the retransfer to the Whittemores, who immediately transferred the property to Wells, and as a part and complement of the

same transaction, Wells forthwith gave an obligation to the assignees, to indemnify them against all claims and demands whatever, which might be made against them, by reason of the assignment, or of the retransfer, in terms quite large enough to include the outstanding claims of any creditors, to whom they might be liable; and he hypothecated the whole of the retransferred property to the assignees, to secure the performance of this obligation. It is true, that it was not an absolute undertaking to pay the note, which the plaintiff had paid as surety; but it was a conditional obligation to pay it, if, upon principles of equity, the assignees were liable for it. The recitals in the obligation of Wells show, that the whole was one transaction, and that the transfer of the property to Wells, and the obligation of Wells to the assignees, with a mortgage of the same property to secure it, was a part of the consideration, on which this very retransfer was made.

If, therefore, I am right in supposing that the assigned property became bound by the terms of the original assignment, that equitable lien has never been discharged. It was transferred by the trustees, through the Whittemores, the original assignors, to Wells, with express notice and recognition of the trust; and the original fund, bound by that trust, consisting of the assigned property and its proceeds, is bound by it still.

I cannot perceive, therefore, that the assignees have been deceived or misled, or drawn into loss or danger of loss, by the failure of Wyman and of the plaintiff to become parties to the assignment, or by their failing to object to the reassignment of the property, having notice that such a measure was in contemplation, or by standing by and seeing the assignees make such a retransfer, without notice of their claim. I can perceive no want of conscience, good faith or reasonable diligence on the part of the plaintiff, which should deprive her of her equitable remedy.

It is said, that the consequence of a judgment for the plaintiff will be to give her the whole amount of her claim; whereas, if she does not succeed here, it will go into the

hands of the assignee of Thomas J. Whittemore, and be equally divided amongst his creditors, in which the plaintiff will share. Undoubtedly, equality is equity; but it must be of those between whom there is an equality of right.

If I am right in the foregoing view, the whole of the assigned property was put in trust and bound for the payment of all the assignor's debts, including the note since paid by the plaintiff. If other creditors released their claims, it was probably because they obtained some payment satisfactory to themselves. The assignors were entitled to the surplus only, after the payment of all the claims of creditors. Those who are now creditors of Thomas J. Whittemore are those who have become creditors since the assignment, or those who have voluntarily agreed to release their claims under the assignment, and to take a new obligation on his personal credit alone. In either event, their claims on this fund are only those of Whittemore himself, a claim to the surplus after the creditors under the assignment have been paid in full. There certainly, then, is no equality of right to this fund between one who has a preferred claim and those who have claims to the surplus after the preferred claims are satisfied.

The fact, that the complainant formerly brought a suit at law, and attempted, by trustee process or otherwise, to reach some part of the trust property, struck me as the greatest impediment to her right to maintain this suit. But I do not think it insuperable. In general, when the party is bound to make an election between a suit at law and a suit in equity, it is in a case where a remedy is sought against the same person, and where the claims are repugnant and inconsistent.

Here they are not against the same person. The ground of argument on the part of the defendant is, that the plaintiff cannot now maintain that the property stands charged with this trust, because she formerly brought a suit, on the assumption that the trust and the trustees had been discharged. But the answer now made by the defendants is chargeable with the same inconsistency. They insisted, and they now insist, that the property was retransferred to the

debtor, and is no longer liable to be held and applied to the payment of her debt, and that the trustees were discharged from their responsibility. If this were true, then her only remedy at law would be by a suit against the debtor ; and her attempt to reach property by attachment applied only to property in which the assignees had no longer any title as trustees. Besides, this trust fund was created as a collateral security for the payment of the note for which the plaintiff was surety for the Whittemores. But Thomas J. Whittemore, after the death of his brother and partner, was the principal debtor, liable to the plaintiff; and her attempt to recover her debt against the principal, which proved fruitless, could not prevent her from still seeking her remedy from the fund created for the purpose of giving such collateral security I am therefore of opinion, that the commencement of such suit, in which no satisfaction has been obtained, cannot prevent the plaintiff from maintaining this suit. .

In regard to the objection, that the plaintiff ought to have sued for herself and other creditors, I think it comes too late ; nor does it appear that there is any other creditor standing on the same footing. It is stated, that all the original creditors relinquished, with two or three exceptions ; but it does not appear, that such other creditors have not obtained other satisfaction. Had the objection been earlier taken, the bill might have been so amended as to avoid the exception altogether ; and even now, should any other creditor appear, I am not aware that it would be too late to present a claim ; but I think it is an exception that the defendants cannot now take.

*Decree for the plaintiff.*

To the above decree, and the reasons and grounds of it, the defendants excepted, as being contrary to law. The case was thereupon reserved for the consideration of the whole court, in matter of law, to reverse, modify, or affirm the decree, according to the legal and equitable rights of the parties. The nature of the exceptions sufficiently appears in the opinion of the court.

*M. S. Clarke,* (with whom was *C. G. Loring,*) for the defendants.

*G. Sparhawk,* for the plaintiff.

SHAW, C. J. Upon the argument now adduced to the court, we are of opinion, that the decree ought to be affirmed A doubt arose upon one point. It was strongly urged by the counsel for the defendants, that if the plaintiff knew of the retransfer of the assigned property, and made no objection, her silence amounted to an acquiescence, and thus, by a well established principle, she could not afterwards object ; and it was insisted or assumed, that there was proof of such knowledge. The point was not much considered in the opinion reported, because it seemed clear, that if the fact were so, neither the original assignees, nor their assignee Wells, could have been misled by it, and so did not bring the plaintiff within the principle. But, upon recurring to the case, the fact upon which the argument is founded does not appear to be proved. This depends on the bill and answer. The defendants say in their answer, that they do not admit, that the reconveyance was without the knowledge and consent of the plaintiff and of Wyman ; but on the contrary, they believe and allege, that Wyman and the plaintiff, or their lawful agents, were informed that the reconveyance was contemplated, before the same was made, and that they did not object ; and they then aver, that the same would not have been made, if they or either of them had intimated an objection. Is this statement true ? If it had been a more explicit averment of any fact within their own knowledge, it would not be evidence for them, because it was not responsive to the bill. In referring to the bill, it appears that the plaintiff originally stated, that the retransfer was made without her knowledge or consent. Before answer, she had leave to amend, by striking out the word " knowledge," leaving the averment to stand " without her consent." There is therefore no evidence of her knowledge on the subject.

But there was no privity between Wyman and the plaintiff ; on the contrary, their interests were in some respects adverse. The plaintiff was not a creditor ; but being a surety on a note made before the assignment, she might, by a clause

in the assignment, have the benefit of it, as a creditor, in the contingency of her being obliged to pay the debt.

But Russell, as the personal representative of Wyman, was the holder of the note ; and he expressly declined assenting to this reassignment. This was sufficient to put the parties on their guard, as to the rights and claims of the then holder of this note on the assigned effects ; and that they acted upon such caution is manifest from the fact, that in making the retransfer to Whittemore, and by him to Wells, this note was enumerated as one outstanding, against which the assignees required indemnity.

It was not suggested in the opinion, nor relied upon, that Wells's obligation to the trustees, secured by a mortgage back of the assigned property, to indemnify them against the demands contained in the schedule, of which this Wyman's note was one, made him or them liable, if they were not liable before.

The obligation and mortgage were not relied on for that purpose, but only as proof of notice, both to them and him, that this note was still outstanding ; and that if the trustees should prove to be liable for it, the effects were still to stand charged as a security therefor.

The liability of the trustees depended upon the original assignment ; and whether it continued in force, or was discharged by the lapse of time, or by any other of the defences relied on, would still be open questions to be decided on their own merits, independently of the terms or provisions of the bond given by Wells to the trustees.

*Reference to the master on the grounds stated.*

An application was made to the court, at the present term, by the defendants, in behalf of Fearing and others, creditors, alleging, that if the plaintiff is entitled, there is a large number of creditors, not yet wholly paid, &c., and praying for leave to file a cross bill against the plaintiff, for the purpose of making such creditors parties to this suit, and enabling the court to decree the execution of said trusts, if at all, in favor of all the remaining creditors.

37 *

An application was also made by Prentice & Sons, cred-
itors, praying to be permitted to become parties plaintiff,
jointly with the plaintiff, in order to present and prove their
claims against the assignors, and share in the proceeds of the
assigned property.

But, it appearing to the court, that all the creditors referred
to in the application of the defendants became parties to the
retransfer, and requested the assignees to make it, and thereby
released the assignees, their application was refused. The
court also thought that it came too late; and, for that reason,
the application of Prentice & Sons was refused.